### TURNER & SEYMOUR MFG. CO. v. VALENTINE LUMBER & SUPPLY CO.
#### Civ. A. No. 6897.

District Court, Massachusetts.

June 23, 1948.

Roberts, Cushman & Grover and Richard F. Walker, all of Boston, Mass. (Ward, Crosby & Neal and Page S. Haselton, all of New York City, of counsel), for plaintiff.

Charles J. Weston, of Springfield, Mass., Melvin R. Jenney and Richard R. Hildreth, both of Boston, Mass., Otis A. Earl, of Kalamazoo, Mich., and Frank E. Liverance, Jr. and Liverance & VanAntwerp, all of Grand Rapids, Mich., for defendant.

SWEENEY, District Judge.

In this action the plaintiff charges an infringement of United States Letters Patent No. 2,329,463 covering a sash balance. The defendant denies infringement and, in a counterclaim, asks for an adjudication that the patent is invalid because the alleged inventor, one Froelich was not in fact the inventor of the device in question. At the trial of the cause, it was conceded that the only question before the Court was the validity of the patent. The defense of non-infringement was not urged. Although the Valentine Lumber and Supply Company is the nominal defendant, the defense was in fact conducted and controlled by the Grand Rapids Hardware Company, a Michigan corporation, which was the manufacturer of the sash balances accused herein.

#### Findings of Fact

The patent in suit was granted to the plaintiff on the application of one Froelich, which was a continuation of two co-pending applications by Froelich—one under date of January 14, 1940, and the other un-

der date of August 6, 1938. The claims in suit are claims 3, 10, 11, and 12, and they relate to a mechanism for quick adjustment of a spring in a sash balance. The device in question consists of a long coil spring fitted inside and attached to one end of a tube. On that end of the tube is a screw-like ratchet for tensioning and releasing the tension of the spring manually. The plaintiff, the patentee, does not describe this device as a ratchet, but I shall so describe it for to all intents and purposes it is one, or operates like one. On the outside of the cylinder and guided by the track thereon is a movable fixture to be attached to the inner surface of the window frame. The entire device is fitted in a recess of the sash so that it is completely concealed from view, except for the screw-like ratchet which appears at the top or bottom of the window sash. When the window sash is raised or lowered, the member affixed to the window frame, in co-operation with the spiral track on the outside of the tube, causes the tube to revolve thereby tensioning the spring, one end of which is anchored to the window sash. As the window is raised or lowered the tube is caused to turn. Being fastened to the spring, as the tube turns, it turns the spring, thus tensioning it. The reverse operation of the sash will turn the tube in the opposite direction, thereby unwinding or releasing the tension of the spring which is attached to it internally. To accomplish a successful exercise of the proper amount of tension, it is necessary from time to time to make adjustments of the spring to provide for changes in climatic conditions, the presence of heat or cold, and for other reasons unnecessary to set forth. It is to this feature of the operation of a sash balance that the plaintiff claims a new and patentable invention.

Prior to 1930 the almost universal method of controlling the raising and lowering of windows was through the cord, weight and pulley method which we have seen in all of our homes. Sometime early in the 1930s, the Unique sash balance appeared on the market and was very successful. It was a cheap, easily installed balance. This Unique balance was covered by the three Larson patents issued between 1931 and 1934, and consisted of a twisted ribbon affixed to the window frame in such a manner that, co-operating with a tube as the window was lowered or raised, the ribbon caused the tube to wind in such a way as to tension the spring. This balance was all concealed within a groove in the window sash and, as the window was lowered or raised, the metal ribbon affixed to the window frame became exposed or hidden, depending upon the upward or downward movement of the window. There was no method of adjusting the tension of this spring except on installation. To adjust it later, it was necessary to take the window sash out of the window.

In 1937 and 1939 Viehweger obtained three patents upon sash balances with coil springs contained within a tube, with the co-operating member riding an open track in the tube rather than on the upraised track as provided for in the plaintiff's device. While the Unique balance had the field pretty much to itself until the defendant's device appeared, it was mainly due to the fact that Unique could put its device on the market at a cost which was very reasonable. The prior devices of Schuch and Soss could not be successfully made and sold at a reasonable cost. Viehweger met the commercial challenge by making his tubing with the open track out of a rolled tube of sheet metal. This enabled him to produce a balance which could be a competitive challenge to Unique. Viehweger commenced to experiment with sash balances as early as 1935. He first approached the Grand Rapids Hardware Company with the idea of having them manufacture his device. He disclosed to this company and to several others the device which he later patented. Nothing came out of this contact with the Grand Rapids Hardware Company and, late in 1936, he contacted this plaintiff for the purpose of having it become interested in manufacturing his device. This first contact was of brief duration but, around the middle of 1937, he was again in touch with the plaintiff and disclosed to it and to Froelich, and other workmen, various features of his device. If he had a ratchet device at that time he did not disclose it. All of this is important only upon the defendant's contention as evidenced by the counterclaim, that

556

Viehweger was actually the inventor of the claims awarded to Froelich.

Some time later, when both Froelich's and Viehweger's applications were pending in the Patent Office, two interferences were declared between them, and Viehweger was ruled by the Patent Office in the second interference as being estopped to show that he was the first inventor, and the claims were awarded to Froelich. The defendant contends that, had not Viehweger been estopped by the Patent Office rule, he would have shown clearly that in 1936 he had actually invented the device for which Froelich later secured the patent. It is unnecessary to pass on this issue.

■ Long prior to either the Viehweger or the Froelich patent, or even the Unique patent in 1932, two patents had issued to Schuch for sash balances (1900 and 1904), which used the spring and tube method of tensioning the spring, and which had a tensioning device for adjusting the tension of the coil on installation. The Soss British patent (1906) disclosed the tube with a coil spring therein, and with a ratchet device on the bottom for adjustment on installation. In view of the prior art, I am lead to the conclusion that the plaintiff's patent is invalid for want of invention. All of its elements were old and well known long prior to the plaintiff's application for a patent. Probably the most common example of a spring within a tube being tensioned by a ratchet is the ordinary shade roller, which is contained in every home. At the trial the plaintiff did not contend that it invented the combination between the ratchet and the spring and the tube but, rather, that it had provided the method of ready adjustment of the spring tension through the ratchet and the screwhead, which was exposed to ready adjustment at all times and which could be done without removing the sash from the window frame.

■ When the plaintiff first experimented with the sash balance instead of the ratchet clutch, it had an arm which was affixed to the window. This could be wound on installation and then affixed firmly to the window. In attempting to control the coil through some other means it hit upon the ratchet idea. The ratchet-clutch-spring retaining means were old, as disclosed by Schuch, Larson, and Soss. The Schuch and Soss structures were perfected a great many years before the plaintiff's device, or even before Unique. That they could not be made commercially successful at that time cannot hide the fact that the spring-tube-ratchet combination had been disclosed. To have made the plaintiff's device commercially successful in the light of the disclosed art was not invention, but was the application of mere mechanical skill.

### Conclusions of Law

From the foregoing I conclude and rule that the plaintiff's patent is invalid.

Judgment is to be entered for the defendant with costs.